# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SAID S.,[1] | ) |
|  | ) |
| Plaintiff, | ) |
|  | ) |
| v. | ) Case No. 1:22-cv-00362 (GMH) |
|  | ) |
| MARTIN O'MALLEY, | ) |
| Commissioner of Social Security,[2] | ) |
|  | ) |
| Defendant. | ) |
| | ) |

## MEMORANDUM OPINION

Plaintiff Said S. brought this action seeking to reverse the final decision of the Commissioner of Social Security, Martin O'Malley ("Defendant" or "Commissioner"), affirming the denial of his application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. § 405(g). He alleges that the Administrative Law Judge ("ALJ") erred in several respects when determining that Plaintiff had the Residual Functional Capacity ("RFC") to perform light work with some additional limitations. More specifically, he argues that the ALJ failed to properly evaluate the extent to which Plaintiff's impairment of the lumbar spine and impairment of the cervical spine affected his RFC. Plaintiff seeks reversal of the Commissioner's decision and a judgment that he is entitled to benefits or, in the alternative, remand to the

---

[1] Plaintiff's name has been partially redacted in accordance with the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States. *See* Memorandum from Hon. Wm. Terrell Hodges, Chair, Comm. on Ct. Admin. & Case Mgmt. to Chief Judges of the U.S. Cts. of Appeals, Chief Judges of the U.S. Dist. Cts., Clerks of the U.S. Cts. of Appeals, and Clerks of the U.S. Dist. Cts. (May 1, 2018), https://www.uscourts.gov/sites/default/files/18-ap-c-suggestion_cacm_0.pdf [https://perma.cc/N9T2-U5XG].

[2] Martin O'Malley, Commissioner of Social Security, is substituted for Kilolo Kijakazi pursuant to Rule 25(d) of the Federal Rules of Civil Procedure.

Commissioner for further administrative proceedings.  The Commissioner argues that the ALJ's decision should be affirmed.

Based on the parties' arguments and review of the record, Plaintiff's motion for judgment of reversal is denied and Defendant's motion for judgment of affirmance is granted.[3]

## I.     BACKGROUND

### A.     Statutory and Regulatory Framework

To be eligible for SSI benefits under the Social Security Act, the Social Security Administration ("SSA") must find a claimant to be "disabled," meaning that the individual is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."   42 U.S.C. § 1382c(a)(3)(A).  To make that determination, an ALJ gathers evidence, holds a hearing, takes testimony, and performs the following five-step, sequential inquiry of the disability claim:

Step one:  whether the claimant is engaging in "substantial gainful activity";[4]

Step two:  whether the claimant has a "severe" medically-determinable physical or mental impairment or combination of impairments;[5]

---

[3] The relevant docket entries for purposes of this Memorandum Opinion are: (1) the administrative record, ECF No. 8; (2) Plaintiff's Motin for Judgment of Reversal, ECF No. 21; (3) Defendant's Motion for Judgment of Affirmance and Opposition to Plaintiff's Motion for Judgment of Reversal, ECF No. 24; and (4) Plaintiff's Opposition to Defendant's Motion for Judgment of Affirmance and Reply to Defendant's Opposition to Plaintiff's Motion for Judgment of Reversal, ECF No. 28.  The page numbers cited herein are those assigned by the Court's CM/ECF system.

[4] "Substantial gainful activity" is work that "involves doing significant and productive physical or mental duties" and is "done (or intended) for pay or profit."  20 C.F.R. § 416.910; *see also* 20 C.F.R. § 404.1510 (defining "substantial gainful activity" for the purposes of Social Security disability insurance benefits ("DIB") claims).  "If [the claimant is] doing substantial gainful activity, [the Social Security Administration] will find that [the claimant is] not disabled." 20 C.F.R. § 416.920(a)(4)(i); *see also* 20 C.F.R. § 404.1520(a)(4)(i) (defining the step one inquiry for DIB claims).

[5] An impairment or combination of impairments is "severe" if it "significantly limit[s]" a claimant's "physical or mental ability to do basic work activities," such as "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling"; "seeing, hearing, [or] speaking"; "[u]nderstanding, carrying out, and remembering simple instructions"; exercising judgment; "[r]esponding appropriately to supervision, co-workers[,] and usual work situations"; or "[d]ealing with changes in a routine work setting."  20 C.F.R. § 416.922; *see also* 20 C.F.R. § 404.1522 (defining a severe impairment for the purposes of DIB claims).

Step three:  whether the claimant's impairment is equivalent to one of the disabling impairments listed in the appendix of the relevant regulation, 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the "listings");

After step three, the ALJ determines the claimant's residual functional capacity—i.e., the most he or she is able to do notwithstanding his or her physical and mental limitations;

Step four:  whether the impairment prevents the claimant from performing his or her past relevant work;[6] and

Step five:  whether the claimant, in light of his or her age, education, work experience, and RFC, is unable to perform another job available in the national economy.[7]

*See* 20 C.F.R. § 416.920; *see also* 20 C.F.R. § 404.1520 (outlining the five-step sequential inquiry for DIB claims); *Butler v. Barnhart*, 353 F.3d 992, 997 (D.C. Cir. 2004).  "An affirmative answer to question 1 or negative answers to questions 2 or 4 result in a determination of no disability. Affirmative answers to questions 3 or 5 establish disability."  *Hines v. Bowen*, 872 F.2d 56, 58 (4th Cir. 1989).

The claimant bears the burden of proof at the first four steps of the evaluation.  *Callahan v. Astrue*, 786 F. Supp. 2d 87, 89 (D.D.C. 2011).  At step five, the burden shifts to the Commissioner to identify specific jobs available in the national economy the claimant can perform. *Id.*  In making this determination, an ALJ may call a Vocational Expert ("VE") to testify at the

---

[6] "Past relevant work" is work "done within the past 15 years, that was substantial gainful activity, and that lasted long enough for [the claimant] to learn to do it."  20 C.F.R. § 416.960(b)(1); *see also* 20 C.F.R. § 404.1560(b)(1) (defining "past relevant work" for the purposes of DIB claims).  If the claimant can perform his or her past relevant work, a finding of "not disabled" is required.  20 C.F.R. § 416.920(a)(4)(iv); *see also* 20 C.F.R. § 404.1520(a)(4)(iv) (defining the step four inquiry for DIB claims).

[7] At the fifth step, the ALJ may, "'[i]n the ordinary case, . . . resort[ ] to the applicable medical vocational guidelines'" (also known as "the grids") to determine whether the claimant is disabled.  *Rosa v. Callahan*, 168 F.3d 72, 78 (2d Cir. 1999) (quoting *Bapp v. Bowen*, 802 F.2d 601, 604 (2d Cir. 1986)); *see also* 20 C.F.R. Pt. 404, Subpt. P, App. 2.  "The grids 'take[] into account the claimant's residual functional capacity in conjunction with the claimant's age, education and work experience.'"  *Id.* (alteration in original) (quoting *Zorilla v. Chater*, 915 F. Supp. 662, 667 (S.D.N.Y. 1996)). However, when a claimant has additional limitations beyond those contemplated by the grids, the ALJ cannot rely on the grids alone to establish non-disability.  *Id.*  In such cases, the testimony of a VE is generally required.  *Smith v. Bowen*, 826 F.2d 1120, 1122 (D.C. Cir. 1987).

hearing as to whether, based on the claimant's RFC, he or she can perform other work that exists in the national economy.[8]  *Id.* at 90.

B.      **Plaintiff's Disability Claims, Procedural History, and the Administrative Hearing**

Plaintiff is a sixty-three-year-old man who last worked in September 2014.  ECF No. 8-2 at 21, 37.  In October 2015, he sustained several allegedly disabling injuries from a motorcycle accident. ECF 8-2 at 36–37.  Plaintiff subsequently applied for disability benefits on March 22, 2019, claiming that the following impairments had rendered him disabled since March 20, 2015: bulging disc, arthritis, chronic pain throughout the whole body, muscle spasms, and repair surgery of the right arm.  ECF No. 8-3 at 3.  The SSA denied Plaintiff's claim for benefits on April 20, 2019, *id.* at 12, and affirmed that denial on September 20, 2020, *id.* at 25.

Thereafter, Plaintiff requested a hearing by an ALJ, which was held telephonically on May 11, 2021.  ECF No. 8-2 at 31–54.  At the hearing, the ALJ heard testimony from both Plaintiff and a VE.  *Id.*  Plaintiff testified that he held a master's degree in electrical engineering.  *Id.* at 36.  He further testified that he worked at Freddie Mac.  *Id.* at 36–37.  Prior to that, he opened his own company, Com Tech Associates, providing software engineering and program services.  *Id.*  at 37–38.  He also worked at Blue Cross Blue Shield Care First, performing services similar to those he engaged in at Com Tech Associates.  *Id.* at 38.

Plaintiff also testified about his physical abilities.  *Id.* at 41–44.  He stated that he could walk twenty to thirty minutes, approximately one mile in length, and that he could stand for ten minutes.  *Id* at 41.  After ten minutes, he would need to sit, a result of pain in his shoulder, neck,

---

[8] In determining whether "unskilled, sedentary, light, and medium jobs exist in the national economy" that a claimant can perform, a VE may rely on the Dictionary of Occupational Titles, 20 C.F.R. § 404.1566(d)(1), which "provides a brief description of occupations within the national economy and lists the capabilities that each occupation requires of a worker."  *Callahan*, 786 F. Supp. 2d at 90.

and hip. *Id.* As to his ability to sit, Plaintiff said that he could do so for around ten minutes. *Id.* Sitting and sleeping, Plaintiff claimed, were his "main problem[s]." *Id.* Regarding his strength, Plaintiff testified that he could lift one gallon of milk, which he later amended to one to two gallons of milk. *Id.* at 42, 47. Finally, Plaintiff related that he had difficulty moving the fingers on his left hand. *Id.* at 43. Although he could send an email and "all that," Plaintiff testified that he was generally unable to engage in activities requiring movement of the fingers. *Id.* Plaintiff estimated that, when typing slowly, he could use a keyboard for ten to fifteen minutes. *Id.* Plaintiff also testified that strain in his neck and shoulder impeded his ability to type. *Id.*

As for his chronic pain, Plaintiff testified that he felt pain "all over," that "it moves around," and that he experienced the most pain in his neck and shoulder. *Id.* at 44. Plaintiff explained that he took Advil to relieve the pain he experienced. *Id.* Though Plaintiff testified that he had taken Percocet, he related that he only did so in the initial years after his motorcycle accident. *Id.* Plaintiff testified that he had undergone physical therapy following his accident, that it was initially useful, but that his greatest cause of concern, his inability to sleep, had not been resolved. *Id.* at 45. Additionally, he elaborated that "if [he was] continually in motion, [the pain was] much better," whereas sitting was "much harder." *Id.* at 45–46. Plaintiff also testified that he could run three miles a day, play tennis, and do yoga. *Id.* at 47. With regard to his daily activities, Plaintiff testified that he was able to shop and cook, that he sometimes cleaned, and that he took his time doing all of his chores. *Id.* at 47–48. Plaintiff also stated that he still drove, but that he had to be "very careful" when turning his head left or right. *Id.* at 48.

The ALJ next heard the opinion of the VE. *Id.* at 49–52. The VE classified Plaintiff's previous work using two DOT codes: financial consultant, 250.257-014, and software engineer, 030.062-010. *Id.* at 50. Both had a specific vocational preparation ("SVP") of eight and an

exertional level of sedentary.[9]  *Id.*  The ALJ then asked the VE a series of hypotheticals.  *Id.* at 50–52.  First, he asked the VE to consider a hypothetical individual of Plaintiff's age, education, and past work experience and to further assume that the hypothetical individual could "occasionally" lift, carry, push, and pull twenty pounds; could sit for six hours in an eight-hour workday; could stand and walk for six hours; could "occasionally" reach overhead bilaterally, frequently in all other directions; could "only" handle, finger, and feel bilaterally; could "occasionally" climb ramps and stars; could balance, stoop, kneel, crouch, and crawl; could "never" climb ropes, ladders, and scaffolds; and could "occasionally" be exposed to moving mechanical parts, unprotected heights, and vibrations.  *Id.* at 50–51.  The VE testified that an individual with those limitations would be able to perform Plaintiff's past work as a financial consultant and software engineer.  *Id.* at 51.  Next, the ALJ asked the VE about the same hypothetical individual, but with additional limitations, including a sedentary exertional profile and the ability to "occasionally" lift, carry, push, and pull ten pounds; to "frequently" lift, carry, push, and pull less than ten pounds; and to sit for six hours and to stand and walk for two hours in an eight-hour work day.  *Id.*  The VE testified that a hypothetical individual with those limitations would still be able to perform in Plaintiff's previous lines of work.  *Id.*

Lastly, the ALJ afforded Plaintiff's counsel the opportunity to question the VE.  *Id.* at 52. First, Plaintiff's attorney noted that his client testified that he could sit for only ten minutes without break.  *Id.*  This, Plaintiff's counsel estimated, meant that Plaintiff would spend fifteen percent of his time off task.  *Id.*  Plaintiff's attorney then asked the VE whether Plaintiff could perform his previous work with this limitation.  *Id.*  The VE testified that, based on her background, education,

---

[9] SVP is defined as "the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation."  20 C.F.R. § 656.3.  A position with an SVP of eight requires "[o]ver 4 years up to and including 10 years" to achieve average performance.  *Id.*

and training, an individual who spends fifteen percent of the time off-task would not be able to engage in any full-time gainful employment. *Id.* Second, Plaintiff's counsel asked whether an individual who could type for only ten minutes would be able to perform work existing in significant numbers in the national economy. *Id.* at 53. The VE explained that an individual with this limitation, too, would be precluded from full-time gainful employment. *Id.*

**C.     The ALJ's Decision**

The ALJ issued his final decision on May 21, 2021. ECF No. 8-2 at 17–26. He concluded that Plaintiff was not disabled as he had the RFC to perform his prior work as a financial consultant and software engineer. *Id.* at 18, 25.

**1.     Substantial Gainful Activity, Severe Impairment, and the Listings**

At step one of the five-part sequential analysis, the ALJ found that Plaintiff had not engaged in a substantially gainful activity from the time of his disability onset on March 20, 2015, through the date he was last insured, December 31, 2019. *Id.* at 19. At step two, the ALJ found that Plaintiff suffered from the following severe impairments: degenerative disc disease of the cervical spine and status-post fracture of the right elbow and wrist. *Id.* At step three, the ALJ concluded that Plaintiff's impairments did not meet or medically equal Listing 1.15 for disorder of the skeletal spine resulting in compromise of the nerve root, or Listing 1.18 for abnormality of a major joint in any extremity. *Id.* at 20. From there, the ALJ moved to assessing Plaintiff's RFC.

**2.     Plaintiff's RFC**

The ALJ found that Plaintiff had the RFC to perform "light work," except that he could "occasionally" reach overhead bilaterally and "frequently" reach in other directions; could "frequently" handle, finger, and feel bilaterally; could "occasionally" climb ramps/stairs, balance, stoop, kneel, crouch, and crawl; could "never" climb ropes, ladders, or scaffolds; and could

"occasionally" be exposed to moving mechanical parts, unprotected heights, and vibration.  *Id.*; *see also* 20 CFR 404.1567(b) (defining light work).

In determining Plaintiff's RFC, the ALJ emphasized that he considered Plaintiff's "symptoms and the extent to which those symptoms [could] reasonably be accepted as consistent with the objective medical evidence and other evidence."  *Id.*  To perform this analysis, the ALJ engaged in a two-part inquiry.  *Id.*  First, he determined whether Plaintiff's impairments were such that they could reasonably be expected to produce his pain and other symptoms.  *Id.*  Second, the ALJ assessed the extent to which Plaintiff's pain and symptoms reduced, or eliminated, his ability to conduct work-related activities.  *Id.* at 21.  The ALJ concluded that, although Plaintiff's medically determinable ailments could reasonably be expected to cause his alleged symptoms, Plaintiff's statements about the intensity, persistence, and limiting effects of those symptoms were not entirely consistent with the record evidence.  *See id.*

In conducting this assessment, the ALJ recounted Plaintiff's testimony concerning his alleged limitations, which included being able to walk for twenty to thirty minutes, stand for five to ten minutes, sit for ten minutes before stretching for ten to fifteen minutes, and use a keyboard for ten to fifteen minutes.  *Id.*  The ALJ also considered Plaintiff's testimony regarding his alleged chronic pain in his "shoulder, neck, elbow, and hand."  *Id.*  Notably, the ALJ observed that Plaintiff's "neck and head are major issues for him."  *Id.*  The ALJ acknowledged that Plaintiff stated that he had "widespread pain" for which he takes Advil but denied taking any other medications.  *Id.*  The ALJ also evaluated Plaintiff's daily activities.  *Id.*  These included, in relevant part, on "some days" running up to three miles, playing tennis, and participating in yoga. *Id.*  Further, the ALJ considered that Plaintiff lives alone and testified that he can manage his own cooking, cleaning, and shopping, albeit he "takes his time performing chores."  *Id.*  Finally, though

Plaintiff testified that he could drive, the ALJ acknowledged that he "has problems looking left or right as well as turning." *Id.*

The ALJ next analyzing the medical evidence. *Id.* at 21–23. To begin, the ALJ cited records demonstrating that Plaintiff sustained fractures to his left wrist and right elbow from a motorcycle accident in October 2015. *Id.* at 21. The ALJ noted that Plaintiff exhibited soft tissue swelling, comminuted distal radius fractures, and intra-articular extension to the radiocarpal and radioulnar joints, for which Plaintiff had surgery. *Id*. at 22. The ALJ noted that Plaintiff's post-operative recovery was uneventful and his pain was controlled with medication. *Id.* As to Plaintiff's first round of physical therapy in November 2015, the ALJ observed that Plaintiff initially exhibited a limited range of motion and reported "severe elbow pain, tingling in the fourth and fifth digits, and sleep interruption secondary to pain." *Id.* Throughout the course of therapy, however, the ALJ explained that Plaintiff experienced decreased swelling in the elbow, "no significant manipulative restriction" resulting from his left wrist fracture, and increased strength and range of motion. *Id.*

At a follow up examination in October 2016, the ALJ assessed that Plaintiff endorsed bilateral upper extremity stiffness but exhibited "normal movement of the extremities, as well as normal gait and station without any neurological deficits." *Id.* The ALJ also noted that Plaintiff began yoga and hiking at this time. *Id.* Plaintiff also received occupational therapy in October 2016. *Id.* At intake, Plaintiff complained of residual stiffness in his bilateral upper extremities. *Id.* Upon physical examination, he exhibited decreased range of motion of the upper extremities and triggering of the right thumb. *Id.* The ALJ found that the "medical record depicts that [Plaintiff's] strength and range of motion gradually improved with physical therapy." *Id.* By the time of his discharge from therapy, the ALJ observed that Plaintiff reported reduced symptoms in

the neck and shoulder.  *Id.*  As a result, Plaintiff regained the ability to participate in yoga, Pilates classes, working out at the gym, biking, and hiking.  *Id.*  While the examiner remarked that Plaintiff appeared to "not perform at full capacity during his [physical therapy] discharge evaluation when compared to prior visits," the ALJ noted that the examiner "indicated that previous objective measurements demonstrated full improvements with range of motion and strength despite the [Plaintiff's] subjective reports and complaints."  *Id.* at 22–23.

Next, the ALJ reviewed a December 2016 orthopedic evaluation for pain in Plaintiff's bilateral shoulders and right elbow.  *Id.* at 23.  During that examination, Plaintiff exhibited full range of motion in his cervical spine but showed some pain with hyperextension rotation on both sides.  *Id.*  Additionally, although Plaintiff exhibited some tenderness of the trapezius, the ALJ noted that Plaintiff had normal strength and range of motion, and that Plaintiff was intact neurovascularly.  *Id.*  Reviewing diagnostic imaging, the ALJ noted that there was some evidence of degenerative changes in Plaintiff's cervical spine, but that imaging of the shoulders revealed normal findings.  *Id.*  During a physical therapy evaluation in August 2017, the ALJ observed that Plaintiff demonstrated full range of motion of the cervical spine during the examination, with some pain when extending, and full range of motion of the shoulder, except for pain with flexion.  *Id.* The ALJ also noted that, although Plaintiff exhibited "shoulder and paraspinal tenderness with positive Neers and Spurling Testing," he otherwise retained "full muscle strength in the bilateral arms, intact reflexes, negative Tinel's testing in elbows and wrists, and grossly intact sensation to light touch from C5 to T1 although reduced sensation in the fifth digit bilaterally."  *Id.*

From there, the ALJ reviewed an MRI of Plaintiff's cervical spine.  *Id.*  The ALJ found that there was evidence of multilevel spondylosis and moderate bilateral foraminal stenosis at C4-C5 and C6-C7.  *Id.*  The ALJ observed that Plaintiff underwent physical therapy for these

limitations, during which he had some improvement.  *Id.*  The ALJ continued by describing that, by September 2017, Plaintiff "denied having any actuate issues" and reported that his right shoulder was "95% back to normal."  *Id.*  The ALJ also noted that clinical observation showed "close to normal range of motion of the right shoulder, grossly intact sensation, and normal gait." *Id.*

The ALJ found based on this review of the longitudinal medical record that Plaintiff was able to perform "light work" with the additional limitations noted in his RFC.  *Id.*  The ALJ explained that he rejected greater physical limitations in the RFC for a number of reasons.  First, Plaintiff's strength and range of motion increased with physical therapy.  *Id.* Specifically, most examinations noted that he had "normal muscle strength, intact sensation, and normal physiological gait without focal deficits."  *Id.*  Second, the ALJ noted that the opinion of the consultative examiner, Dr. Elizabeth Nolte, was consistent with the assessed RFC.  *Id.*  Dr. Nolte opined that Plaintiff had only "mild limitation in squatting, bending, head movements, grasping and reaching," and that he should avoid only "heavy lifting, heavy carrying, frequent bending, pushing, pulling, and overhead activities," despite his physical limitations and abnormalities.  *Id.* Finally, the ALJ pointed out that Plaintiff's subjective complaints of pain were inconsistent with his daily activities.  *Id.* at 23–24.  For example, the ALJ expressedly questioned how Plaintiff could participate in yoga, Pilates classes, work out, bike, and hike, with his alleged limitations.  *See id.* at 24.  Further, the ALJ noted that Plaintiff testified at the hearing that he "stopped working over a year before his motorcycle injury for reasons unrelated to those in his claim for disability."  *Id.*

Finally, the ALJ addressed the opinions of two physicians: Dr. Nolte and Dr. Gene Godwin. *Id.*  As for Dr. Nolte's findings—which indicated that Plaintiff had only a "mild limitation in squatting, bending, head movements, grasping and reaching," but should "avoid heavy lifting,

heavy carrying, frequent bending, pushing, pulling and overhead activities"—the ALJ found them persuasive because Dr. Nolte performed an "extensive physical examination" of Plaintiff, clearly explained his limitations based off her findings, and had previous knowledge about Social Security disability. *Id.* Further, the ALJ found that Dr. Nolte's findings were "substantially consistent with the [Plaintiff's] reported capabilities as discussed" throughout the ALJ's decision. *Id.*

Next, the ALJ considered the findings of Dr. Gene Godwin, a state agency, non-examining expert. *Id.* Dr. Godwin opined that Plaintiff could perform "light work," except Plaintiff could only "occasionally" climb ramps/stairs, stoop, and crawl; could "frequently balance," kneel, and crouch; and "never" climb ladders, ropes, or scaffolds. *Id.* Further, Dr. Godwin found that Plaintiff could "frequently" reach overhead with the left upper extremity, "occasionally" lift overhead with the right upper extremity, and should "avoid" concentrated exposure to workplace hazards and vibration. *Id.* The ALJ found Dr. Godwin's testimony to be persuasive because, although he did not examine Plaintiff, he thoroughly reviewed the record and applied his professional expertise to the evidence. *Id.* Lending further credibility to Dr. Godwin's testimony, the ALJ explained, was the fact that he assessed limitations "consistent with [Plaintiff's] history of degenerative disc disease of the cervical spine and fractures of the right elbow and left wrist." *Id.* According to the ALJ, while Plaintiff had "shown limited range of motion and diminished strength on occasion, most examinations note he retain[ed] normal muscle strength, intact sensation, and normal physiological gait without focal deficits." *Id.* at 24–25.

Based on the above findings, the ALJ reaffirmed his conclusion that Plaintiff could perform light work with the additional limitations set forth in the RFC. *Id.* at 25.

3.      Conclusion of the Five-Step Sequential Inquiry

At step four, based on the RFC finding, the ALJ determined that Plaintiff could perform his past work.  *Id.*  Specifically, the ALJ concluded that Plaintiff could work as a financial consultant and software engineer.  *Id.*  Accordingly, the ALJ did not reach step five of the analysis.

The ALJs decision became the final decision of the Commissioner when the Appeals Council denied Plaintiff's request for review on January 20, 2022.  *Id.* at 2–4.

## II.      LEGAL STANDARD

A federal district court has jurisdiction over a civil case challenging a final decision of the Commissioner.  42 U.S.C. § 405(g).  A reviewing court must affirm the Commissioner's decision if it is based on substantial evidence in the record and the correct application of the relevant legal standards.  *Id.*; *Butler*, 353 F.3d at 999.

"[T]he plaintiff bears the burden of demonstrating that the Commissioner's decision is not based on substantial evidence or that incorrect legal standards were applied*." Lane-Rauth v. Barnhart*, 437 F. Supp. 2d 63, 64 (D.D.C. 2006).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).  It requires "more than a scintilla [of evidence], but can be satisfied by something less than a preponderance of the evidence."  *Fla. Mun. Power Agency v. FERC*, 315 F.3d 362, 365–66 (D.C. Cir. 2003) (quoting *FPL Energy Me. Hydro LLC v. FERC*, 287 F.3d 1151, 1160 (D.C. Cir. 2002)).  Ultimately, the substantial evidence standard is a "low bar," *Louisiana Pub. Serv. Comm'n v. FERC*, 20 F.4th 1, 7 (D.C. Cir. 2021), and "requires considerable deference to the decision rendered by the ALJ," *Crosson v. Shalala*, 907 F. Supp. 1, 3 (D.D.C. 1995); *see also Biestek v. Berryhill*, 587 14 U.S. 587, __, 139 S. Ct. 1148, 1154 (2019) ("[W]hatever the meaning of

13

'substantial' in other contexts, the threshold for such evidentiary sufficiency [under the substantial evidence standard] is not high."). The reviewing court may neither reweigh the evidence presented to it nor replace the Commissioner's judgment "concerning the credibility of the evidence with its own." *Crosson*, 907 F. Supp. at 3; *see also Butler*, 353 F.3d at 999 (finding that the district court's role is not to reweigh the evidence but only to determine whether the ALJ's findings are "based on substantial evidence and a correct application of the law"). However, "this standard of review requires the Court to carefully scrutinize the entire record to ensure that the Commissioner, through the ALJ, has both analyzed all of the evidence available and has sufficiently explained his/her reasoning and the weights given to the facts." *Pinkney v. Astrue,* 675 F. Supp. 2d 9, 14 (D.D.C. 2009); *see also Lane-Rauth*, 437 F. Supp. 2d at 65 ("[T]his standard of review 'calls for careful scrutiny of the entire record,' to determine whether the Commissioner, acting through the ALJ, 'has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits[.]'" (second alteration in original) (quoting *Butler*, 353 F.3d at 999)). In applying this standard, courts "must also be mindful of the harmless-error rule. Consequently, even if [the court] perceive[s] error," it must "affirm the Commissioner's decision unless the error is prejudicial." *Saunders v. Kijakazi*, 6 F.4th 1, 4 (D.C. Cir. 2021).

Finally, the Court's job is to "consider the grounds actually proffered by the ALJ" rather than to make those determinations for itself, *Ward v. Berryhill*, 246 F. Supp. 3d 202, 210 (D.D.C. 2017), or credit "post-hoc rationalization[s]" advanced by the parties, *Cooper v. Berryhill*, No. 16-cv-1671, 2017 WL 4326388, at *5 (D.D.C. Sept. 28, 2017); *see also SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947) (holding that a reviewing court "must judge the propriety of [an agency's judgment] solely by the grounds invoked by the agency"); *Jones v. Astrue*, 647 F.3d 350, 356 (D.C. Cir. 2011) (citing *Chenery*, 332 U.S. at 196).

III.     DISCUSSION

Plaintiff's challenge to the Commissioner's decision focuses on the ALJ's determination of Plaintiff's RFC.  ECF No. 21 at 4–10.  Specifically, he argues that the ALJ failed to perform a proper function-by-function analysis in making his RFC determination.  *Id.*  Plaintiff further takes issue with the ALJ's analysis of two of his alleged limitations:  impairment of the lumbar spine and impairment of the cervical spine.  *Id.*  As to his lumbar spine condition, Plaintiff charges that the ALJ failed to evaluate pertinent evidence concerning his spinal impairment and consider its impact on his RFC.  *Id.* at 6–8.  Similarly, as to Plaintiff's cervical spine condition, he asserts that medical evidence in the record supports a more limited RFC.  *Id.* at 9–10.  For the reasons explained below, Plaintiff's arguments concerning the ALJ's assessment of his RFC fail.

### A.     The ALJ's Assessment of Plaintiff's RFC Was Sufficient and Supported by Substantial Evidence

Plaintiff contends that the ALJ erred in finding that Plaintiff could perform "light work" with additional limitations because the ALJ failed to conduct a "function-by-function" analysis when determining this RFC.  *Id.* at 6.  In making this argument, Plaintiff cites extensively from Social Security Ruling ("SSR") 96-8p, which provides that "[t]he RFC assessment is a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities" and from caselaw addressing the ruling. ECF No. 21 at 4 (quoting SSR 96-8p, 1996 WL 374184, at *3 (S.S.A. July 2, 1996)), 5.

As Judge Lamberth found in *Banks v. Astrue*, however, SSR 96-8p "does not provide the specific mandate" that an ALJ "must undertake a specific discussion of each of the seven functions"; rather the ruling requires only "consideration of all the factors, not enumeration of all the factors."  537 F. Supp. 2d 75, 84–85 (D.D.C. 2008) (emphasis omitted); *see also Gordon v. Colvin*, No. 15-CV-1028, 2016 WL 6088263, at *14 (D.D.C. Sept. 30, 2016) (finding that an ALJ

15

need not separately and explicitly discuss each functional area at issue, but may fulfill her obligation by citing evidence that addresses those areas and explicitly or implicitly adopting the findings included in that evidence), *report and recommendation adopted*, 2016 WL 6088266 (D.D.C. Oct. 18, 2016); *Teague v. Astrue*, No. CA 1:10-276, 2011 WL 7446754, at *8–9 (D.S.C. Dec. 5, 2011) (finding that SSR 96–8p does not "automatically require[] the specific, function-by-function analysis Plaintiff seeks"), *report and recommendation adopted*, 2012 WL 693692 (D.S.C. Mar. 5, 2012).  Indeed, although the D.C. Circuit has not addressed that specific question, *see Banks*, 537 F. Supp. 2d at 84, a number of other Courts of Appeals have indicated that "an ALJ need not expressly discuss a claimant's capacity to perform each work-related function before classifying the claimant's RFC in exertional terms," *Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013) (per curiam) (collecting cases from the Sixth, Seventh, Eighth, and Ninth Circuits); *see also Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015) (adopting the reasoning of *Cichocki* and rejecting "a per se rule requiring remand where the ALJ does not perform an explicit function-by-function analysis").  SSR 96-8p states that "[t]he RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)."  1996 WL 374184, at *7; *see also Butler*, 353 F.3d at 1000; *Contreras v. Comm'r of Soc. Sec.*, 239 F. Supp. 3d 203, 209 (D.D.C. 2017) ("[T]he ALJ's decision must contain a narrative discussion identifying the evidence that supports each conclusion." (quoting *Banks*, 537 F. Supp. 2d at 84)).  That is, the ALJ must "build an 'accurate and logical bridge from the evidence to [her] conclusion'" so that a reviewing court can "assess the validity of the agency's ultimate findings and afford a claimant meaningful judicial review."  *Lane-Rauth*, 437 F. Supp. 2d at 67 (quoting *Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002)).

Here, a logical bridge is readily discernible.  To reiterate, the ALJ found that Plaintiff had the RFC to perform light work, except that he could "occasionally" reach overhead bilaterally and "frequently" in all other directions, "frequently" handle, finger, and feel bilaterally, "occasionally" climb ramps/stairs, balance, stoop, kneel, crouch, and crawl, "never" climb ropes, ladders, or scaffolds, and "occasionally" be exposed to moving mechanical parts, unprotected heights, and vibration.  ECF No. 8-2 at 20.  The ALJ determined this RFC after "considering the [Plaintiff's] treatment history, the objective clinical findings, the [Plaintiff's] subjective complaints, and all the medical opinions and evidence of record."  *Id.* at 20–25.

- As previously explained, the ALJ concluded that Plaintiff's testimony concerning greater physical limitations than those recognized in the RFC was inconsistent with evidence found in the medical record.  *Id.* at 21, 23;

- The ALJ reasoned that Plaintiff's testimony conflicted with the longitudinal medical record which showed that "his strength and range of motion gradually improved with physical therapy" and "[d]espite having some degeneration of cervical spine with a history of fractures of the upper extremities, most examinations note he retain[ed] normal muscle strength, intact sensation, and normal physiological gait without focal deficits."  *Id.* at 23;

- The ALJ considered several pieces of evidence that supported these conclusions, including: Plaintiff had an "uneventful" post-operative period following surgery repairing his right elbow and wrist following his motorcycle accident in October 2015.  *Id.* at 22;

- Plaintiff's "strength and range of motion gradually improved with [the first round of] physical therapy" in November 2015.  *Id.*;

- During a follow-up examination in October 2016, Plaintiff exhibited normal movement of the extremities and normal gait and station without any neurological deficits.  *Id.*;

- After a second round of physical therapy in October and November 2016, Plaintiff exhibited improved strength and range of motion, as well as decreased symptoms in his neck and shoulder.  *Id.*;

- By December 2016, Plaintiff had full range of motion, symmetry of the shoulders, five out of five muscle strength, and was intact neurovascularly.  *Id.* at 23;

- In August 2017, Plaintiff demonstrated full range of motion of the cervical spine except pain with extension and full range of motion of the shoulder except with flexion.  *Id.*;

- While an MRI of the cervical spine in August 2017 revealed evidence of multilevel spondylosis and moderate bilateral foraminal stenosis, treatment records note that he had "some improvement" after a third round of physical therapy. *Id.*;

- In September 2017, Plaintiff denied having any acute issues and "that his shoulder was '95% back to normal.'" *Id.* (quoting ECF No. 8-9 at 10);

- Clinical observations at that time noted that Plaintiff exhibited "close to normal range of motion of the right shoulder, grossly intact sensation, and normal gait and station." *Id.*; and

- During Dr. Nolte's consultative physical examination in September 2019 Plaintiff "exhibited normal gait/stance, full range of motion throughout except some restriction in the spine shoulders, intact reflexes, intact sensation, and full muscle strength throughout except 4 out of 5 strength in the right elbow with extension and 4 out of 5 grip strength." *Id.*

The ALJ reasonably concluded that these clinical findings and Plaintiff's treatment history "undermin[ed] [Plaintiff's] reports of debilitating symptoms and limitations," and fairly restricted his RFC to light work with additional postural restrictions to account for any lingering pain and mobility issues he may have. *Id.*; *see also Jamil D. v. Kijakazi*, No. 21-cv-464, 2022 WL 910334, at *10 (D.D.C. Mar. 29, 2022) (reasoning that the ALJ properly dismissed plaintiff's testimony concerning his difficulty bending, sitting, and standing, among other alleged limitations, because the ALJ explained how the objective medical evidence, including physical status examinations and the opinions of state agency consultants, contradicted plaintiff's testimony); *Tallent v. Kijakazi*, No. 4:20-cv-1682, 2022 WL 278751, at *3 (E.D. Mo. Jan. 31, 2022) (upholding the ALJ's RFC finding because the ALJ rightly acknowledged, and rejected, plaintiff's testimony concerning her "worsening back pain with radiculopathy, tenderness, and limited range of motion" because it contradicted medical examinations showing "intact sensation, normal reflexes, full muscle strength and normal range of motion" and "normal coordination and range of motion").

The ALJ's basis for discrediting Plaintiff's testimony did not stop there, however.  As he explained, "[f]urther undermining [Plaintiff] reports of debilitating symptoms and limitations, [was] the fact that [Plaintiff] described activities that [were] not as limited as one would expect given his allegations."  ECF No. 8-2 at 23–24.  For example, the ALJ expressed doubt that Plaintiff could "participate in yoga, [go to] Pilates classes, work[] out at the gym, bik[e], and hik[e]" with his alleged limitations.  *See id.* at 24.  Plaintiff also was able to conduct his regular chores, such as doing laundry, shopping, and going to the store.  *Id.*  Describing the ways in which a plaintiff's daily activities contradicted his testimony concerning his alleged disabling limitations further supports that the ALJ here satisfied the "logical bridge" requirement.  *Banks*, 537 F. Supp. 2d at 84–85 (holding that the ALJ constructed a "logical bridge" because the ALJ explained how plaintiff's daily activities were inconsistent with her testimony that she could only work a five-hour workday); *Judea L. v. Kijakazi*, No. 22-cv-1879, 2023 WL 6065023, at *8 (D.D.C. Sept. 18, 2023) (finding that the ALJ's determination that the plaintiff could perform medium work was supported by substantial evidence where the plaintiff's subjective complaints of pain conflicted with her own testimony about her "activities of daily living," treatment history, objective findings, and medical opinions); *Davis v. Apfel*, 239 F.3d 962, 967 (8th Cir. 2001) ("Allegations of pain may be discredited by evidence of daily activities inconsistent with such allegations."); **Dungan* v. Saul*, No. 4:19-cv-380, 2020 WL 4015475, at * 2 (W.D. Mo. July 16, 2020) ("And it is well settled that where a claimant's reported daily activities are inconsistent with the alleged debilitating symptoms, an ALJ may discount the severity of the allegations); ***Roberts v. Comm'r of Soc. Sec.*, No. 3:22-cv-51, 2023 WL 4243225, at *14 (N.D. Ohio Jan 23, 2023) (explaining that the ALJ properly discredited plaintiff's subjective complaints because "[the ALJ] noted that despite

19

Claimant's testimony that pain prohibited her from sitting, standing, walking, or maintaining concentration and attention, she also reported a number of activities that required these abilities").

Finally, the opinions of Drs. Nolte and Godwin, both of which the ALJ found persuasive, also support the ALJ's RFC of "light work" with additional limitations.  ECF No. 8-2 at 23–24.  Dr. Nolte opined that Plaintiff had only "mild" limitations in bending, squatting, head movements, grasping, and reaching, and should avoid both heavy lifting and carrying and frequent bending, pushing, pulling, and overhead activities..  *Id.* at 24; *see* 20 C.F.R. § 404.1567(b) (defining "light work" as requiring no heavy lifting or carrying and either "a good deal of walking or standing" or "sitting most of the time with some pushing and pulling of arm and leg controls").  Dr. Godwin opined that Plaintiff could "frequently" reach overhead with the left upper extremity; "occasionally" reach overhead with the right upper extremity; and that Plaintiff should "avoid" concentrated exposure to workplace hazards and vibration.  ECF No. 8-2 at 24.  The ALJ's RFC was largely consistent with both doctors' opinions concerning Plaintiff's limitations, and where it differed, the RFC was more restrictive than what either doctor proposed.  *Compare id.* at 20 (limiting Plaintiff's RFC to only "occasionally" reaching overhead bilaterally) *with* ECF No. 8-3 at 11 (opining that Plaintiff would "frequently" reach overhead on the left side and "occasionally" lift overhead on the right side).  Even when considering this more restrictive RFC, the ALJ found Plaintiff not disabled based on the testimony of the VE.[10]  ECF No. 8-2 at 25–26.

For all these reasons, the Court has no problem discerning the "logical bridge" between the ALJ's RFC and the evidence on which it was based, and concludes that the RFC, as well as the ALJ's ultimate determination that Plaintiff was not disabled, are amply supported by substantial evidence—that is, by "such relevant evidence as a reasonable mind might accept as adequate to

---

[10] Additionally, the ALJ relied on the testimony of the VE to find that Plaintiff would not be disabled even if her were further limited to only sedentary work.  *See* ECF No. 8-2 at 26 n.1.

support a conclusion." *Richardson*, 402 U.S. at 401 (quoting *Consol. Edison Co.*, 305 U.S. at 229 (1938)).

### B.      Plaintiff's Lumbar Spine Condition

Plaintiff's more specific claims of error fair no better.  He first argues that "the ALJ failed to properly evaluate pertinent evidence" related to his lumbar spine condition, namely, various reports by him to treatment providers about his limited ability to sit, an MRI taken after his motorcycle accident, and his testimony regarding his lumbar spine limitations.  ECF No. 21 at 6–7.  To start, "it is clear that an ALJ is obligated to consider all relevant medical evidence and may not cherry-pick facts to support a finding of non-disability while ignoring evidence that points to a disability finding." *Demetria R. v. Kijakazi*, No. 20-cv-3227, 2022 WL 3142376, at *11 (D.D.C. June 30, 2022) (internal quotation marks omitted) (quoting *Dicks v. Colvin*, No. 15-cv-934, 2016 WL 4927637, at *4 (M.D. Fla. Sept. 16, 2016)), *report and recommendation adopted*, 2022 WL 3139026 (D.D.C. Aug. 5, 2022).  However, it is also well-established that "an ALJ is not required to discuss every piece of evidence submitted." *Taylor v. Berryhill*, No. 18-cv-316, 2019 WL 5540844, at *10 (D.D.C. Aug. 2, 2019) (quoting *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998)), *report and recommendation adopted*, 2019 WL 5538560 (D.D.C. Oct. 25, 2019); *see also Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir.2005) ("[T]here is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision . . . ."); *Clifton v. Chater*, 79 F.3d 1007, 1009–10 (10th Cir. 1996) (holding that an ALJ is not required to discuss every piece of evidence); *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994) ("[A] written evaluation of each piece of evidence or testimony is not required."); *Sito v. Comm'r of Soc. Sec.*, 229 F. Supp. 3d 633, 644 (N.D. Ohio 2017) ("[A]n ALJ is not required to discuss all the evidence submitted, and an ALJ's failure to cite specific evidence does not indicate that it was not considered." (quoting *Simons v.*

21

*Barnhart*, 114 F. App'x 727, 733 (6th Cir. 2004)).  "Instead, all the ALJ must do is 'minimally discuss a claimant's evidence that contradicts the Commissioner's position' on the way to constructing an 'accurate and logical bridge from the evidence to [his] conclusion.'" *Demetria R.*, 2022 WL 3142376, at *11 (alteration in original) (some internal quotation marks omitted) (quoting *Lane-Rauth*, 437 F. Supp. 2d at 67); *Taylor*, 2019 WL 5540844, at *10 ("The standard in this district requires an ALJ to 'at least minimally discuss a claimant's evidence that contradicts the Commissioner['s] position.'" (alteration in original) (quoting *Lane-Rauth*, 437 F. Supp. 2d at 67)).

The ALJ met this burden here.  The ALJ *did* consider Plaintiff's lumbar spine condition and his alleged impaired ability to sit. For example, the ALJ explicitly acknowledged Plaintiff's testimony that he "could sit for about 10 minutes before he has to get up to stretch for 10 to 15 minutes" and "that it feels better when he is in motion rather than just sitting or standing."  ECF No. 8-2 at 21. Additionally, Plaintiff charges that the ALJ ignored his report of "low back pain radiating to his lateral knee" to Dr. Nolte, as well as Dr. Nolte's finding of "decreased range of motion of the lumbar spine, as well as tenderness of the left lumbar region and the lumbar spine." ECF No. 21 at 6.  The ALJ not only included that exhibit in his RFC analysis, but also cited the exact page Plaintiff alleges he disregarded.  ECF No. 8-2 at 23 (citing ECF No. 8-9 at 66–68). Even if it were not the rule that "an ALJ's failure to cite specific evidence does not indicate that it was not considered," *Simons v. Barnhart*, 114 F. App'x 727, 733 (6th Cir. 2004), it would be difficult to argue that the ALJ ignored medical records that he in fact cited in his decision.

The ALJ also considered additional evidence of Plaintiff's lumbar spine condition not identified in his brief.  For instance, the ALJ reviewed the report created by Dr. Godwin, *id.* at 24, which both recognized Plaintiff's alleged disability "due to bulging disc" and explained that Plaintiff had "mild reduced [range of motion] of the lumbar spine to 80 degrees," ECF No. 8-3 at

7–8.   And notably, Dr. Godwin—whose opinion the ALJ found persuasive—did not assess a greater sit/stand limitation than was found by the ALJ.[11]   ECF No. 8-3 at 9–12; ECF No. 8-9 at 68. Nor did Dr. Nolte.   Indeed, no medical source of record opined that Plaintiff was limited in his ability to sit.

Moreover, when questioning the VE, the ALJ asked whether an individual who could "sit for six hours in an eight-hour workday" and "stand and walk for six hours," among other limitations, could perform jobs that exist in significant numbers in the national economy.   *Id.* at 50.   The ALJ also inquired whether an individual who could "sit for six hours in an eight-hour workday and stand and walk for two hours in an eight-hour work day," among other limitations, could perform jobs that exist in significant numbers in the national economy.   *Id.* at 51.   The VE responded that such an individual could still form the Plaintiff's previous lines of work as a financial consultant and software engineer.   *Id.*   The ALJ directly cited this line of questioning when finding that Plaintiff could still perform his previous lines of work.   *Id.* at 25–26.

This, therefore, is not a situation in which the ALJ wholly ignored Plaintiff's alleged difficulty sitting.   To the contrary, the ALJ considered evidence of Plaintiff's lumbar spine condition on several occasions.   *Id.* at 21, 24–26, 51.   That the ALJ did not consider all evidence identified by Plaintiff is immaterial, for that is not the standard; rather, remand is justified only if the ALJ entirely ignored "an entire line of evidence that supports a disability finding."   *Goodman v. Colvin*, 233 F. Supp. 3d 88, 109 (D.D.C. 2017) (quoting *Jones*, 623 F.3d at 1162).   By

---

[11] Although it is true, as Plaintiff points out, that Dr. Godwin failed to mention diagnostic imaging of Plaintiff's lumbar spine in his report, *see* ECF No. 21 at 7; ECF No. 8-3 at 2–12, such a fact does not invalidate the ALJ's reliance on his opinion.   An ALJ may properly rely on the opinion of a state agency, non-examining physician where it is supported by the medical record.   *See, e.g.*, *Michelle K. v. Comm'r of Soc. Sec.*, 527 F. Supp. 3d 476, 484 (W.D.N.Y. Mar. 192021) (finding that the ALJ was "well within his discretion" to rely on a non-examining consultant's opinion that was "amply" supported by the medical record).   Here, Dr. Godwin considered all of Plaintiff's medical history, including his lumbar spine condition, before determining that the record supported a finding of light work.   ECF No. 8-3 at 54–60.

"minimally discuss[ing Plaintiff's] evidence that contradicts the Commissioner's position," the ALJ here satisfied his burden to consider the impact of Plaintiff's lumbar spine condition. *Lane-Rauth*, 437 F. Supp. 2d at 67. Further, to the extent Plaintiff testified to a greater limitation in sitting than that required for him to perform his past work as a financial consultant and software engineer—and it is not clear from the record that he did so[12]— as the ALJ fairly concluded based on his review of the entire record, Plaintiff's testimony was not persuasive because it suffered from inconsistencies. ECF No. 8-2 at 23–24; *see also Demetria R.*, 2022 WL 3142376, at *20 (rejecting plaintiff's contention that "the ALJ ignored her hearing testimony that she would need to lie down throughout the workday to alleviate pain," because, although the ALJ did not explicitly address the disputed testimony, the ALJ did address how the plaintiff's statements regarding the intensity and persistence of her symptoms were inconsistent with her medical evidence and other evidence in the record).

### C.    Plaintiff's Cervical Spine Condition

Also unavailing is Plaintiff's argument that the ALJ "failed to property evaluate [his] neck impairment." ECF No. 21 at 9–10; ECF No. 28 at 4–5. Plaintiff bases his argument entirely on a physical examination of Plaintiff in September 2019 by Dr. Nolte who observed cervical spine flexion of 20 degrees, extension of 5 degrees, rotation to the right of 0 degrees and to the left of 30 degrees, and lateral flexion to the right of 5 degrees and to the left of 15 degrees. ECF No. 21 at 9 (citing ECF No. 8-9 at 67). Plaintiff asserts that these findings reflect a "75 to 100 percent

---

[12] Even if credited by the ALJ, it is unclear whether Plaintiff's testimony that he could sit for "10, 15 minutes" before he would need to "get up and do some stretching," ECF No. 8-2 at 41, would preclude him from performing his past work as a software engineer or financial consultant. As SSA policy recognizes, such professional jobs offer a greater "degree of choice" as to whether a person can sit or stand when performing them, as compared to unskilled jobs. SSR 83-12, 1983 WL 31253, at *4 (S.S.A. Jan. 1, 1983); *see also Goodman*, 223 F. Supp. 2d at 111 (D.D.C. 2017) ("It is Plaintiff's burden . . . to prove that [he] is disabled," and thus his burden to provide evidence in support of the limitations for which he advocates).

loss of motion on most test measures" in his neck. *Id.* To make that argument, Plaintiff cites to an article from the internet to establish the normal range of motion of cervical spine. *Id.* That article was not part of the record before the ALJ.

Plaintiff's argument fails for three reasons. First, the Court may only review evidence contained within the administrative record. *United States v. Carlo Bianchi & Co.*, 373 U.S. 709, 714–15 (1963) (explaining that judicial review of agency action is "ordinarily limited to consideration of the decision of the agency . . . and of the evidence on which it was based."); *Smith v. Chater*, 99 F.3d 635, 638 n.5 (4th Cir. 1996) ("[I]n determining whether the ALJ's decision is supported by substantial evidence, a district court cannot consider evidence which was not presented to the ALJ"); *Jeffries v. Astrue*, No. 3:10-cv-1405, 2012 WL 314156, at *13 (S.D.W. Va. Feb. 1, 2012) ("In light of the Court's limited role, which is confined to a review of the record before the Commissioner at the time of his final decision, the Court is precluded from considering evidence that was never submitted to the Commissioner."). That is a fundamental feature of district court review of ALJ decisions. The court reviews the ALJ's determination in light of "the evidence upon which the findings and decision complained of are based," and not evidence which "could not . . . have been the basis" for the ALJ's determination because they are not in the record.[13] *Warfield v. Colvin*, 134 F. Supp. 3d 11, 17 (D.D.C. 2015) (internal quotation marks omitted) (quoting 42 U.S.C. § 405(g)).

---

[13] A court may remand disability cases to the Commissioner for consideration of new medical evidence not presented to either the ALJ or Appeals Council pursuant to the sixth sentence of subsection (g) of section 405, known as the "sentence-six remand." 42 U.S.C. § 405(g). Remand under this sentence is appropriate only upon a showing that: (1) the evidence is new, (2) the evidence is material, and (3) the claimant has good cause for failing to produce that evidence during a prior proceeding. *Jones*, 647 F.3d at 357; *see Melkonyan v. Sullivan*, 501 U.S. 89, 98 (1991) ("[A] court remands [under the sixth sentence of Section 405(g)] because new evidence has come to light that was not available to the claimant at the time of the administrative proceeding and that evidence might have changed the outcome of the prior proceeding."). The first and third requirements for a sentence-six remand are satisfied when there is new "evidence not in existence or available to the claimant at the time of the administrative proceeding." *Jones*, 647 F.3d at 357–58 (quoting *Sullivan v. Finkelstein*, 496 U.S. 617, 626 (1990)). "In order to satisfy the

Second, Dr. Nolte's medical opinion was consistent with the Dr. Godwin's medical opinion with respect to Plaintiff's neck condition: Dr. Nolte found Plaintiff had only a "mild" limitation in head movements, ECF No. 8-9 at 68, and Dr. Godwin assessed that Plaintiff had no limitations greater than the exertional and postural limitations that the ALJ ultimately recognized in the RFC, ECF No. 8-2 at 24. The ALJ found both doctors' opinions concerning Plaintiff's limitations persuasive—findings that Plaintiff does not directly challenge on appeal.[14] *Id.*

Finally, the ALJ's determination that greater limitations were unnecessary with respect to Plaintiff's neck condition was based on other record evidence in addition to Dr. Nolte's opinion. These included normal, or close to normal, range of motion findings of his neck and shoulders from other providers, ECF No. 8-2 at 23 (citing ECF No. 8-7 at 150; ECF No. 8-9 at 11; improvements to his neck and shoulder pain following stints of physical therapy, *id.* at 22-23 (citing ECF No. 8-8 at 111, 116, 127, 136, 156–82); and Plaintiff's activities of daily living and methods of exercise, including yoga and Pilates, which would require him to move and hold his neck in various positions, *id.* at 24 (citing ECF No. 8-8 at 97–98; ECF No. 8-9 at 66). To be clear, the ALJ considered other evidence in the record which suggested that Plaintiff's neck condition

---

materiality requirement, the claimant must show that the evidence 'might have changed the outcome of the prior proceeding.'" *Id.* at 358 (quoting *Melkonyan*, 501 U.S. at 98). Plaintiff has not attempted to make the showing here.

[14] In any event, the ALJ provided adequate explanation for why he found the opinions of Drs. Nolte and Godwin persuasive. He reasoned that the opinion of Dr. Nolte was credible because she "performed an extensive physical examination" of Plaintiff, "provided clear explanations about [Plaintiff's] limitations based on her findings," was "knowledgeable about social security disability," and made findings "consistent with [Plaintiff's] reported capabilities." ECF No. 8-2 at 24. In a similar vein, the ALJ credited the findings of Dr. Godwin because "he explained his opinion thoroughly," it "tend[ed] to show no significantly greater limitations than opined by the [other] State Agency consultants," and was "consistent with [Plaintiff's] history of degenerative disc disease of the cervical spine." *Id.* at 24. Those reasons are sufficient to find medical opinions persuasive. *See Toney v. Kijakazi*, No. 21-cv-557, 2022 WL 3027008, at *6 (D.D.C. Aug. 1, 2022) (upholding the ALJ's finding "that the consultative examiners' opinions were persuasive because of their depth of analysis and consistency with other record evidence"); *Jamil D.*, 2022 WL 910334, at *11 (reasoning that the ALJ properly credited the opinions of state agency consultants because their opinions were drawn from, and consistent with, the plaintiff's medical record); *Michelle K.*, 527 F. Supp. 3d at 484 (reasoning that an ALJ had appropriately relied upon the opinions of a consultative examiner and state agency physician, despite there being evidence contradicting their conclusions, because each of the physicians' opinions were "amply supported by [the consultative examiner's] examination of Plaintiff and by Plaintiff's medical records").

was more severe, including diagnostic imaging revealing evidence of degenerative changes in the cervical spine, *id.* at 23 (citing ECF No. 8-7 at 150, 170–71; ECF No. 8-8 at 184), and restricted range of motion findings from providers other than Dr. Nolte, *id.* at 22-23 (citing ECF No. 8-8 at 6–7, 91–92).  Where the record evidence is in conflict, it is the responsibility of the ALJ—not the district court on appeal—to determine which interpretation is deserving of weight.  *See Washington v. Saul*, No. 20-cv-662, 2021 WL 2514691, at *8 (D.D.C. June 18, 2021) ("At most, Plaintiff shows that the record is susceptible to more than one interpretation, and where that is the case, deference is given to the ALJ."); *Izzo v. Comm'r of Soc. Sec.*, 168 Fed. App'x 280, 284 (3d. Cir. 2006) ("Where evidence in the record is susceptible to more than one rational interpretation, we must accept the Commissioner's conclusions."); *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) ("Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld.").  Deference is thus to be afforded to the ALJ, who credited the opinions of Drs. Nolte and Godwin and the other record evidence that indicated his neck condition was not disabling.

## IV.    CONCLUSION

For the reasons provided above, an order reflecting that Plaintiff's motion for judgement of reversal, ECF. No 21, is **DENIED** and Defendant's motion for judgment of affirmance, ECF No. 24, is **GRANTED** will be issued.

Date:   May 14, 2024

_____

G. MICHAEL HARVEY
UNITED STATES MAGISTRATE JUDGE